## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAKINS SACKIE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:24-cv-02941-JLS |
| | : | |
| OFFICER DAMEIN LOBACH, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**SCHMEHL, J. -** */s/ JLS*                                                    **OCTOBER 30, 2025**


Plaintiff brought this civil rights action pursuant to 42 U.S.C. §1983, claiming that he was arrested on July 7, 2022 by Defendant Officer Damein Lobach ("Lobach") with excessive force in violation of the Fourth Amendment (Count One). He also asserts a claim against Defendant Allentown Mayor Matthew Tuerck, Allentown Police Chief Charles Roca and five John/Jane Does for supervisor/policymaker liability (Count Two) and a claim against the City of Allentown for municipal liability (Count Three). Finally, he asserts a state claim against Lobach for assault and battery (Count Four) and a state claim against all the Defendants for state constitutional violations (Count Five).

Lobach filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss the case as to him, arguing that because at the time the alleged excessive force incident occurred he was working as part of a federal Task Force and, therefore, as a federal actor, this action could not be brought under 42 U.S.C. §1983. Instead, Lobach claimed that this action could only be brought against him pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

*Narcotics*, 403 U.S. 388, 397 (1971).[1] Lobach further claimed that Plaintiff failed to state a claim under *Bivens*.

Because the parties could not agree on whether Lobach was acting as a federal Task Force officer or as an City of Allentown police officer at the time of the excessive force incident, the Court permitted the parties to engage in a period of limited discovery on the "issue of whether Defendant Damien Lobach was serving in his capacity as an Allentown Police Officer or in his capacity as a federal Task Force officer at the time he arrested Plaintiff on July 7, 2022." [ECF 29.] The Court also denied Lobach's motion to dismiss with leave to renew as a motion for partial summary judgment. [Id.] Presently before the Court are the motions for partial summary judgment filed by Lobach [ECF 38] and by the City of Allentown, Mayor Matthew Tuerk, and Chief Charles Roca. [ECF 40.] For the reasons that follow, both motions are granted.

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the nonmoving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. (citing Anderson, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). The movant bears the initial responsibility for informing the Court of the basis

---

[1] A *Bivens* action is a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials.

for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Lobach has been employed as a police officer with the City of Allentown since July 9, 2009. [ECF 39-4, p.11.] Lobach was attached to the Department of Homeland Security ("DHS") as a federal Task Force officer in 2018. [*Id.*, p. 16.] After completing several months of Task Force officer training, Lobach was assigned to Special Agent Group Supervisor Brent Morrall of DHS' Homeland Security Investigations ("HSI"). [*Id.*, p.17.]  Lobach had to be recertified as a Task Force officer every two years. [*Id.*, p. 53.]

A Memorandum of Understanding ("MOU") between U.S. Customs and Immigration Enforcement Homeland Security Investigations and the Allentown Police Department designated certain employees of the Allentown Police Department as "Designation, Customs Officer (Excepted)--Title 19 Task Force Officer." [ECF 38-2.] The MOU was signed by

HSI Agent Brian Michael on April 28, 2021 and by Allentown Chief of Police Glenn Granitz, Jr. on April 27, 2021. [*Id*.] Under the MOU, HSI had the responsibility to, *inter alia*, provide "appropriate training in laws, policies, and procedures to each designated employee." *Id*. Lobach signed his "Designation, Customs Officer (Excepted)--Title 19 Task Force Officer" form (ICE Form 73-001) on March 10, 2022. [ECF 38-3.] Under his Designation, Lobach was considered a full-time Task Force officer who is "co-located with HSI and is working directly for an HSI first- or second-line supervisor for a minimum of 30 hours per week and is significantly contributing to investigations." *Id*. Lobach also had the authority to make arrests without warrants for violations of federal law and to carry a firearm. [ECF 39, ¶ 7.] Lobach also took HSI-directed and sponsored courses as part of his Task Force officer training. [*Id.*, ¶ 8.]

On July 7, 2022, "HSI Allentown and the Lehigh County Human Trafficking Task Force conducted a proactive undercover operation using the internet to locate and identify persons who use the internet to sexually exploit children." [ECF 39-5.] HSI Special Agent Morrall was in charge of the operation. [ECF 39-4, pp. 22, 25, 107.] During the operation, Lobach was operating as a Task Force officer for HSI. *Id*. Lobach's supervisor at the Allentown Police Department had absolutely nothing to do with the HSI operation. *Id*. No other police officers from the Allentown Police Department participated in the operation. [*Id.*, p. 96.] The operation was to take place at a Motel 6 located in Upper Macungie Township which Lobach testified was outside the jurisdiction of the Allentown Police Department. [*Id.*, pp. 95-96.]

The Plaintiff arrived at the Motel 6 to have sex with an undercover agent posing as a minor female. [ECF 39-5.] Plaintiff proceeded to a room on the second floor. [*Id.*] Once Plaintiff entered the room, the undercover agent identified herself as a police officer. [*Id.*] Plaintiff ran South down the second-floor hallway. Task Force members, including Lobach, pursued him.

Plaintiff stopped at the end of the hallway in front of a fixed glass window. During the pursuit, Lobach contacted Plaintiff with a physical shove, causing Plaintiff to crash through a second-floor fixed glass window and land on the pavement below. [*Id*.] Plaintiff sustained serious injuries from the fall and from glass shards falling on him as he lay on the pavement. Lobach cut himself on the broken window glass from the second-floor window. [*Id*.] The Task Force subsequently arrested Plaintiff. Plaintiff was ultimately charged with state crimes of unlawful contact with a minor, criminal attempted involuntary attempted sexual deviate intercourse with a person under the age of 16, resisting arrest-Undercover Officer from Homeland Security and resisting arrest-Undercover Officer from Allentown Police Department. [ECF 39-2.] On February 7, 2024, a jury convicted Plaintiff on the two sex crimes and acquitted him of both resisting arrest charges. [ECF 39-3.]

"It is well established that liability under § 1983 will not attach for actions taken under color of federal law." *Brown v. Philip Morris Inc*., 250 F.3d 789, 800 (3d Cir. 2001). Our Court of Appeals has recognized that state officers are considered federal actors when carrying out their duties as part of a federal Task Force. *See, e.g.*, *Henry v. Essex County*, 113 F. 4th 355, 361 (3d Cir. 2024); *Lawson v. McNamara*, 438 F. App'x 113, 115 n.1 (3rd Cir. 2011) (holding, in case in which defendant Philadelphia police detective was member of USMS task force, that "the District Court properly construed the action as brought under [*Bivens*]"); *see also Challenger v. Bassolino*, 2023 WL 4287204, *4 (D.N.J. June 30, 2023) (stating that since "Caldwell had been designated a Special Deputy U.S. Marshal and was executing a warrant as part of a NY/NJ RFTF operation, I find that he was a federal actor during the time in question."); *Ramirez v. City of Trenton*, 2022 WL 1284737, at *2–3 (D.N.J. Apr. 29, 2022) (explaining that "the District of New Jersey has classified deputized U.S. Marshals employed by state agencies as federal actors," and

that "[t]he Court has not identified a single case permitting both section 1983 and *Bivens* claims against the same defendants acting as part of a federal task force operation during an isolated incident.") (citations omitted); *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 513 n.2, 537 (D.N.J. 2013) (holding that the defendants, "although they each worked for state and local law enforcement agencies," were "to be considered federal agents acting under federal law during the incident in question" because they were federal Task Force members), *aff'd sub nom. Est. of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239 (3d Cir. 2016).

Other courts have also treated state and local law enforcement officers designated as federal Task Force members as federal agents acting under federal law. *See, e.g.*, *Yassin v. Weyker*, 39 F. 4th 1086, 1091 (8th Cir. 2022) ("Without any 'actual or purported relationship between [Weyker's] conduct and [her] duties as a [St. Paul] police officer,' no section 1983 action is available"); *Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) ("[B]ecause Scarazzini and McAllister were federally deputized for their Task Force work, this claim was properly brought ... as a *Bivens* action."); *Majors v. City of Clarksville*, 113 F. App'x 659, 659-60 (6th Cir. 2004) (explaining that a § 1983 claim brought against police officers serving with a DEA task force was "in reality a *Bivens* claim under the Fourteenth Amendment"); *Texas v. Kleinert*, 143 F. Supp. 3d 551, 562 (W.D. Tex. 2015) ("Courts have consistently treated local law-enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents."); *Pike v. United States*, 868 F. Supp. 2d 667, 670, 677–678 (M.D. Tenn. 2012) (concluding that § 1983 claims against "state and local law enforcement officers who served as members of the Fugitive Task Force ... [of] a program coordinated by the United States Marshal's [*sic*] Service" were "plainly *Bivens* claims, not § 1983 claims"); *Ivey v. Lyman*, 2005 WL 1397134, at *2 (N.D.N.Y. June 1, 2005) ("[D]efendant

is employed by the Albany Police Department, and thus would generally be acting under color of state law in his capacity as a police officer. However, because he was working with the DEA and assigned to the DETF, he is considered to be acting as a federal agent."); *see also* 5 U.S.C. § 3374 (noting that when a state or local government employee is assigned to a federal agency, that individual "is deemed an employee of the agency for the purpose of ... the Federal Tort Claims Act and any other Federal Tort liability statute"). As the facts of these cases reveal, their holdings are not limited only to, as Plaintiff claims, the situation where a state or local police officer was deputized as a United States marshal serving a federal arrest warrant.

The determinative fact common to all these cases is that **at the time of the incident,** the state or local police officer was working in his capacity as duly deputized federal Task Force agent and not performing any duties as a state or local police officer. Here, while Lobach was certainly employed as a full-time Allentown Police Officer on July 7, 2022, **at the time of the incident,** Lobach was working in his capacity not as an Allentown Police Officer, but as a duly deputized federal Task Force agent having only participated in this Operation as a Task Force officer under the guidance of HSI and Task Force Supervisor Morral. HSI personnel, not the Allentown Police Department, retained control over the operational and investigative matters related to that federal Task Force. There is no evidence in the record that Lobach took any actions on July 7, 2022 that were dictated by his position with the Allentown Police Department. Nor does the fact that Plaintiff ended up only being charged with state crimes change the narrative. At the time of the Plaintiff's arrest, Lobach was acting as a federal Task Force officer in a federal human trafficking investigation. Lobach testified that "[e]very -- for the operations that we've done strictly related to those hotel ops, anytime we would get an adult looking to have sex with a minor, they were always open to prosecute them federally.

Obviously, there's a bunch of things that go into that. Their criminal history, obviously, is one of those big ones. So, yes, every one of those type of crimes were always -- that was the purpose of those operations." [ECF 39-4, pp.101-102.] Lobach also confirmed that it is "not uncommon for a federal investigation to yield to state charges." [ECF 39-4, p. 95.]

There are numerous additional disputed facts that Plaintiff contends the Court must consider and which the Court must construe in the light most favorable to Plaintiff. However, whether Lobach was employed as a fulltime City of Allentown police officer at the time of the incident, whether Lobach was not **directly**[2] paid any funds from the federal government for his work as a Task Force officer, whether Lobach did not work the minimum 30 hours per week as a full-time federal Task Force officer and did not co-locate at HIS's Philadelphia Office, whether the City of Allentown paid Lobach for lost wages and medical treatment resulting from the incident, whether Lobach ever received a policy and procedures manual from the federal Task Force, whether Lobach submitted an Allentown Police Department Incident Report but not a corresponding report to HSI; whether Lobach submitted a use of force report to HSI; whether Lobach was using a Lehigh county-owned vehicle and his Allentown Police Department firearm[3]; whether Lobach was paid as a sworn full-time Allentown Police Officer during the time he was acting as a federal Task Force officer and whether Lobach was actually paid any federal workers compensation[4] are simply irrelevant and not material based on the previously cited caselaw. **At the time of the incident,** Lobach, despite being employed as full-time Allentown Police Officer,

---

[2] Lobach testified that the City of Allentown was reimbursed for his overtime work as a federal Task Force officer up to the amount of $19,500. ECF 39-4, pp. 90-91.

[3] Lobach testified that he was issued a federal computer, an HSI phone, several undercover phones as well as a federal vehicle and a gas card. *Id.* at pp. 99-100.

[4] Lobach testified that he "got approval for workmen's comp through the federal government as well. In the end, I never got any direct bills so I don't know who paid what. It all went through either John Ferry with the City of Allentown and/or if something wasn't covered, it would then go through the federal approval number that I received. I don't have copies of any of it because I never had to pay anything. I don't know who paid what." *Id.* at 94.

was working in his capacity as a duly deputized federal Task Force agent and, therefore, was a federal actor, acting under color of federal authority, not under the color of state law as a state actor. Therefore, Plaintiff's federal claims against Lobach must be brought under *Bivens*, not section 1983.

Plaintiff argues that the MOU is invalid because the then-Chief of Police, Glen Granitz, and not the Mayor, signed the MOU on behalf of the City of Allentown. Allentown City Code Section § 5-2, provides:

> Heads of departments; duties.
> A. Duties of department directors. In addition to the duties prescribed in general law, each director of a department shall, under the general direction of the Mayor:
> (1) Direct the performance of all duties and responsibilities required of his department or its subordinate agencies provided by state law, this Administrative Code, or other ordinances of the City, and such other duties as may be required by the Mayor which are not in conflict with law or ordinances;
> (2) Prescribe the internal organization of the department and the duties of subordinate officers and employees within the department;
> (3) Assign functions, powers and duties to subordinate officers and employees within the department and modify such assignments as need appears

ECF 44, Ex. A. Under this provision, former Chief of Police Granitz was clearly delegated the authority, in his role as head of the police department, to interact with other law enforcement agencies such as HSI and sign the MOU, which permitted his subordinate officers to be deputized as federal agents.

Plaintiff also makes the novel argument that since Lobach is referred to as an Allentown Officer and/or has received benefits for his injuries from the City of Allentown's medical insurer, the Defendants are judicially estopped from arguing that his legal role during this incident was that of a federal Task Force officer. Again, the determinative fact is that at the time of the incident, Lobach was acting in his role as federal task force agent and without any

authority from the Allentown Police Department. The fact that the City of Allentown's medical insurer paid medical benefits to Lobach is simply irrelevant.

For the foregoing reasons, both motions for partial summary judgment are granted. Judgment will be entered in favor of Defendant Damein Lobach and against Plaintiff Dakins Sackie on Count One of the Complaint but without prejudice to refiling Count One against Damein Lobach as a *Bivens* claim. Judgment will be entered in favor of Defendants Mayor Matthew Tuerk, Chief Charles Roca and the City of Allentown and against Plaintiff on Counts Two and Three of the Complaint, with prejudice. Count Four (assault) will be dismissed as to Defendant Damein Lobach without prejudice. Count Five (state constitutional violations) will be dismissed as to Defendant Damein Lobach without prejudice. Count Five will also be dismissed as to Defendants Mayor Matthew Tuerk, Chief Charles Roca and the City of Allentown with prejudice.