**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAKINS SACKIE,** **Plaintiff,** | : | |
| **v.** | : | **Civil No. 5:24-cv-02941-JLS** |
| **OFFICER DAMEIN LOBACH, *et al.*,** **Defendants.** | : | |

# MEMORANDUM

**SCHMEHL, J.** **AUGUST 11, 2026**

Plaintiff brought this *Bivens* action,[1] against Defendant Officer Damein Lobach ("Lobach") in his individual capacity, claiming Lobach used excessive force in seizing Plaintiff in violation of the Fourth Amendment (Count One). He also asserts a claim in the alternative against the United States for common law assault and battery under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq*. ("FTCA")(Count Two). Finally, he asserts a state claim against Lobach for assault and battery (Count Three) and a state claim against Lobach for state constitutional violations (Count Four). Presently before the Court are the motions of Lobach and the United States to dismiss the *Bivens* claim for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and to dismiss the FTCA claim without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court will dismiss the *Bivens* claim against Lobach with prejudice for failure to state a claim and dismiss the FTCA claim against the United States without prejudice.[2] Since the

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] The Court previously entered partial summary judgment in favor of Defendant Lobach and against Plaintiff on Plaintiff's claim against Lobach under 42 U.S.C. § 1983. The Court concluded that Lobach was serving in his capacity as a federal Task Force officer attached to the Department of Homeland Security ("DHS") Human

Court will no longer have federal jurisdiction, the Court will also dismiss the two state law claims against Lobach without prejudice.

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Only if "the '[f]actual allegations ... raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id*. at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. (explaining that determining "whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

According to the Amended Complaint, Plaintiff, age 22 with no criminal record, responded to an internet solicitation to engage in a sexual encounter with a minor at a Motel 6 in Upper Macungie Township, Pennsylvania. Am. Compl. at ¶ 7. However, the internet solicitation was actually a "sting operation." *Id*. at ¶ 9. The Plaintiff was directed to go to room 219 located on the motel's second floor. *Id* at ¶ 8. When he arrived at room 219, Plaintiff noticed that the door was partially open. *Id*. at ¶ 10. A "middle-aged woman" appeared and put her hand on Plaintiff's shoulder to guide him into the room. *Id*. Plaintiff stopped and ran from the doorway when he observed two large men in street clothes in the room. *Id*. Fearing the men might harm him, Plaintiff ran South down the hallway to escape, but quickly discovered that there was no exit at that end of

---

Trafficking Operation and not as an Allentown Police Officer on July 7, 2022 and therefore he was not a state actor for purposes of § 1983.[ECF 48.]

the hallway (or, that he overran an exit) and stopped running. *Id*. at ¶ 11. Plaintiff then turned and raised his hands in the air as an act of surrender. *Id*. at ¶ 12.

As the Plaintiff ran down the hallway, one of the two men in room 219, Defendant Lobach, ran out of the room in such a rage that he pushed the woman who was actually an undercover special agent into a wall injuring her shoulder as he exited the room. *Id*. at ¶¶ 13. 14. Lobach, who was considerably larger than Plaintiff, pursued Plaintiff down the hallway at full speed. *Id*. at ¶ 14. According to the Amended Complaint, Lobach never told the Plaintiff to "stop" or "stop running," or to "come back," or gave any other oral command. *Id*. at ¶ 15. Lobach also never told Plaintiff that he was a member of law enforcement, or a federal agent. *Id*. at ¶ 16. Lobach also never told Plaintiff he was under arrest. *Id*. at ¶ 17. Plaintiff did not physically resist, threaten or assault Lobach. *Id*. at ¶ 41.

Plaintiff alleges that Lobach intentionally crashed into him, "checking" him into, and through, a large fixed glass window which was at the end of the hallway. *Id*. at ¶ 19. Lobach also administered a “forearm shiver” to Plaintiff’s neck. *Id*. at ¶ 20. As a result, Plaintiff plunged two stories headfirst onto the pavement below with glass shards raining down on him. *Id*. Plaintiff alleges he sustained a broken neck, fractured legs, spinal injuries, and serious lacerations of his right hand and left arm. *Id*. at ¶ 29. Plaintiff was hospitalized for a month. *Id*. at ¶ 28. Lobach was not disciplined and attempted to cover-up his conduct. *Id*. at ¶¶ 30, 31. Lobach also assisted in prosecuting Plaintiff for resisting arrest, a charge of which Plaintiff was subsequently acquitted by a jury. *Id*. at ¶ 62. At the time of the incident, Lobach was acting as a federal Task Force Officer attached to the Department of Homeland Security (Homeland Security Investigations). *Id* at ¶ 5; [ECF 48].

In *Bivens*, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. *See Bivens,* 403 U.S. at 397**.** However**,** *Bivens* provides a damages remedy for constitutional violations committed by federal actors only in very limited circumstances. *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Indeed, since *Bivens* was decided in 1971, the Supreme Court has expressly recognized an implied cause of action against federal officials in only three types of cases, *see Ziglar*, 582 U.S. at 131, and "has repeatedly refused to recognize *Bivens* actions in any new contexts." *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017); *see also Egbert*, 596 U.S. at 486, 501-02.

The three types of cases with an implied private right of action under *Bivens* are: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment. *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Ziglar*, 582 U.S. at 131 ("These three cases - *Bivens, Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."). Since 1980, the Supreme Court has repeatedly declined to extend *Bivens* to cover other constitutional violations. *Goldey v. Fields*, 606 U.S. 942, 942 (2025) (*per curiam*). These cases "have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 942-43 (internal quotation omitted); *see also Xi v. Haugen*,

68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, ... the Supreme Court has pulled back the reins to what appears to be a full stop and no farther."). In short**,** "unless a case is indistinguishable from *Bivens*, *Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts." *Fisher v. Hollingsworth*, 115 F.4th 197, 206–07 (3d Cir. 2024).

The Supreme Court has "set forth a two-step inquiry to determine the availability of *Bivens* remedies in a particular case." *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024). First, the Court must consider whether "the 'case presents a new *Bivens* context' — *i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court"—using only *Bivens, Davis*, and *Carlson* as a benchmark as well as a "broad" understanding of what constitutes a new context. *Id.* (quoting *Ziglar,* 582 U.S. at 139). The non-exclusive list of factors to consider here includes:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* (quoting *Ziglar*, 582 U.S. at 139-40). "Whether a context is new is an 'easily satisfied' test because 'a modest extension of the *Bivens* action is still an extension[,]' " meaning "[e]ven 'significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough." *Henry v. Essex County*, 113 F.4th 355, 361 (3d Cir. 2024) (cleaned up) (quoting *Ziglar*, 582 U.S. at 147-49); *Fisher,* 115 F.4th at 206 (3d Cir. 2024) ("[A] case can differ meaningfully from *Bivens, Davis*, and *Carlson* even when it involves the same constitutional right as one of those cases.").

If the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *Id*. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert,* 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *Id*. (internal quotation marks omitted) (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

In the case *sub judice*, there is no claim for gender discrimination (*Davis*) and no claim for inadequate care in the prison context (*Carlson*). The only case the facts of this case bear any resemblance to is *Bivens* itself. In *Bivens*, federal narcotics agents [from the now-defunct Federal Bureau of Narcotics] conducted a warrantless search of the plaintiff's apartment and made a warrantless arrest of plaintiff. Specifically, the agents "manacled" the plaintiff at his apartment "in front of his wife and children, and threatened to arrest the entire family" while searching the apartment from "stem to stern." *See Bivens*, 403 U.S. at 389. While *Bivens* and this case indeed share certain similarities on the surface, the major difference is that Plaintiff's amended complaint seeks to hold a DHS–HSI anti-human trafficking task force officer accountable, whereas *Bivens* involved claims against agents from the Federal Bureau of Narcotics. *See Hernandez*, 589 U.S. at 102. A DHS-HSI anti-human trafficking task force obviously has a different legal mandate from federal narcotics agents. *See e.g., Sheikh v. U.S. Dep't of Homeland Sec.,* 106 F.4th 918, 925 (9th Cir. 2024) (declining to extend *Bivens* to any claims against HSI agents because they have a different legal mandate from federal narcotics officers). The Supreme Court has never recognized a cause of action for excessive force against officers operating as part of a DHS-HSI joint federal and state task force dealing with human

trafficking. Therefore, Plaintiff seeks to hold a new category of defendants liable under *Bivens***.** which *Egbert* identified as a new context. *Egbert*, 596 U.S. at 492. And when it comes to adding a new category of defendants, "a court is not undoubtedly better positioned than Congress to create a damages action." *Id*.

In addition, the circumstances of the two cases are very different. The excessive force in *Bivens* occurred in the plaintiff's apartment where he enjoyed a heightened level of privacy. By contrast, the alleged excessive force in this case occurred in a motel where Plaintiff had agreed to meet with a minor female for sex, and subsequently attempted to flee the scene when his plans were thwarted by the presence of the task force officers. This case is therefore factually distinct from *Bivens* and presents a new context. Indeed, in *Egbert*, the plaintiff brought a claim under the Fourth Amendment for the use of excessive force, similar to *Bivens*. However, the Supreme Court refused to extend *Bivens* to cover that plaintiff's case despite finding that the two cases did "involve similar allegations of excessive force and thus arguably present[ed] almost parallel circumstances or a similar mechanism of injury." *Egbert*, 596 U.S. at 495. The Court found that "these superficial similarities are not enough to support the judicial creation of a cause of action." *Id*. The key difference according to the Supreme Court was that in *Egbert*, the Complaint sought to hold a Border Patrol Agent liable as opposed to the federal narcotics officers in *Bivens* which raised some issue of national security concerns. *See also Hernandez,* 589 U.S. at 102.

Having concluded that Plaintiff's claims present a new context, the Court must determine whether "there are any special factors that counsel hesitation" in extending *Bivens. Hernandez*, 589 U.S. at 102 (internal quotation marks and alterations omitted) (quoting *Ziglar*, 582 U.S. at 136). During the second step a court is to ask broadly "if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.' If

so, or even if there is the 'potential' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy.'" *Egbert*, 596 U.S. at 496 (internal citations omitted) (emphasis in original). "When evaluating whether to extend *Bivens*, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Hernandez*, 589 U.S. at 114 (quoting *Ziglar*, 137 U.S. at 135) (internal quotation marks omitted). If "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed,'" a court cannot recognize a *Bivens* remedy. *Egbert*, 596 U.S. at 496 (internal citations omitted) (emphasis in original).

The Court finds that in this case there are special factors present that counsel hesitation in extending *Bivens*.

First, the Supreme Court in *Egbert* made clear that "uncertainty alone" regarding the potential "consequences of recognizing a cause of action under *Bivens*" is a special factor in and of itself. 596 U.S. at 493. As discussed above, the circumstances here undoubtedly present a new *Bivens* context. Accordingly, because at least one special factor is present, the Court declines to fashion a *Bivens* remedy.

In addition, the FTCA, which provides "the exclusive remedy for most claims against Government employees arising out of their official conduct," *Hui v. Castaneda*, 559 U. S. 799, 806 (2010), is an alternative remedial structure that would counsel against implying a damages remedy here. *See Challenger v. Bassolino*, 2023 WL 4287204, at *10 (D.N.J. June 30, 2023) (FTCA is "another alternative remedial structure that would counsel against implying a damages remedy here."); *Oliva v. Nivar*, 973 F.3d 438, 443–44 (5th Cir. 2020) (finding that "special factors counsel against extending *Bivens*" in part due to the availability of the FTCA), *cert. denied*, 141 S. Ct. 2669 (2021); *see also Huckaby v. Bradley*, No. 16-CV-4327, 2018

WL 2002790, at *6 (D.N.J. Apr. 30, 2018) (finding that "the availability of a remedy against the United States on a claim of negligence under the FTCA, in light of [*Ziglar*], is a factor weighing against ... recognizing a *Bivens* remedy"); *Free v. Peikar*, No. 17-CV-159, 2018 WL 905388, at *5–6 (E.D. Cal. Feb. 15, 2018) (declining to extend *Bivens* to a First Amendment claim because the FTCA, *inter alia*, provides an adequate alternative remedy), *report and recommendation adopted*, 2018 WL 1569030 (E.D. Cal. Mar. 30, 2018).

An alternative remedial structure, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 at 1804. Moreover, "[i]t does not matter if those existing remedial structures 'do not provide complete relief' or are 'not as effective as an individual damages remedy.'" *Cohen v. United States*, No. 21-10774, 2022 WL 16925984, at *7 (S.D.N.Y. Nov. 14, 2022) (quoting *Egbert*, 596 U.S. at 493); *see also Ziglar*, 582 U.S. at 145 ("when alternative methods of relief are available, a *Bivens* remedy usually is not").

Another special factor is that, in addition to federal officers, the type of task force involved here also consist of state and local officers who have been federally deputized thereby converting what would normally be state action into federal action. Permitting claims for damages against state task force members could deter state and local officers from joining these task forces which, in turn, could lead to a reduction in such task forces as well as impede cooperation between federal and state authorities.

Finally, as a general matter, our Court of Appeals has stated that "[t]he Constitution entrusts Congress, not the courts, with the power to create new federal causes of action and remedies." *Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022).

In sum, the Court finds that Plaintiff's excessive force claim against Lobach presents a new context, and that "special factors" counsel against expanding the *Bivens* remedy.

In Count Two, Plaintiff asserts a claim against the United States under the FTCA. The FTCA allows plaintiffs to bring certain state law tort claims against the United States. *Brownback v. King*, 592 U.S. 209, 210 (2021). For a court to have jurisdiction over an FTCA complaint, the complaint must assert a claim "[1] against the United States, [2] for money damages, [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008). An FTCA claim must be based on a tort claim that is cognizable under state law. *Id*.

The United States argues that Plaintiff's FTCA claim must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies. The Court agrees.

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *See Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F. 2d 884, 891 (3d Cir. 1997). First, a facial attack "contests the sufficiency of the pleadings." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F. 3d 181, 187-88 (3d Cir. 2006)). Such a facial challenge "attacks the complaint on its face without contesting its alleged facts, [and] is like a 12(b)(6) motion in requiring the court 'to consider the allegations of the complaint as true.'" *Hartig Drug Company, Inc. v. Senju* Pharmaceutical Co. Ltd., 836 F. 3d 261, 268 (3d Cir. 2006). Thus, in ruling on such a motion, the

court assumes the truth of the allegations in the complaint but must analyze the pleadings to determine whether they state an action that comes within the court's jurisdiction. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F. 3d 506, 514 (3d Cir. 2016). A facial 12(b)(1) motion should be granted only if it appears certain that the assertion of subject matter jurisdiction is improper. *Kehr Packages*, 926 F. 2d 1406, 1408-09 (3d Cir. 1991); *Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa.*, 285 F. Supp. 3d 573, 577 (M.D. Pa. 2003).

In contrast, a "factual" attack on subject matter jurisdiction asserts that, although the pleadings facially satisfy jurisdictional requirements, one or more allegations in the complaint is untrue, which therefore causes the action to fall outside the court's jurisdiction. *Carpet Group, Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F. 3d 62, 69 (3d Cir. 2000); *Mortensen,* 549 F.2d at 891. In ruling on factual challenges, a court must consider the merits of the disputed allegations, since "the trial court's ... very power to hear the case" is in dispute. *Id*.

"[A] plaintiff must exhaust all administrative remedies before bringing a claim under the FTCA." *White–Squire v. U.S. Postal Serv.,* 592 F.3d 453, 457 (3d Cir. 2010); 28 U.S.C. § 2675(a).[3] "This requirement 'is jurisdictional and cannot be waived.'" *Roma v. United States,* 344 F.3d 352, 362 (3d Cir.2003) (citation omitted).

---

[3] That section provides:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. § 2675(a)

Plaintiff admittedly did not file an administrative claim with DHS until March 5, 2026, several months after he filed his Amended Complaint in this action. [ECF 60-3, p. 27.] To date, DHS has not issued a final denial in writing. Therefore, this Court has no choice but to dismiss Plaintiff's FTCA claim under Rule12(b)(1) for lack of subject matter jurisdiction. *See* 28 U.S.C. § 2675(a)**.** The dismissal will be without prejudice to Plaintiff refiling the claim in this Court after the DHS has acted.[4]

[4] Our Court of Appeals has held that an amended complaint filed *after* exhaustion does not cure lack of jurisdiction if the original complaint seeking tort damages under the FTCA was filed before exhaustion. *See Hoffenberg v. Provost*, 154 F. App'x 307, 310 (3d Cir. 2005) (upholding a district court's rejection of a plaintiff's argument that, by amending his complaint after the conclusion of the federal agency proceedings, he had essentially re-filed the action thereby fulfilling the FTCA's exhaustion requirement); *see also Patterson v. Potope*, No. 4:11-CV-497, 2013 WL 1314050 at *30 (M.D. Pa. Mar. 28, 2013).